UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTOINE T. SIMMONS,

                    Plaintiff,

          -against-

HEIDE MASON, et al.,

                    Defendants.

**MEMORANDUM OPINION
AND ORDER**

17-CV-08886 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Plaintiff Antoine T. Simmons ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Westchester County Assistant District Attorney Nadine C. Nagler ("Nagler"), Warden Diaz ("Diaz") (together, "County Defendants"), Dr. Sheldon Teperman ("Teperman"), P.O. Api ("Api"), Officer Lebzetter ("Lebzetter"), Officer McManus ("McManus"), P.O. Spaun ("Spaun"), Dr. Audrey Pendleton ("Dr. Pendleton"), Dr. Frank L. Weber ("Dr. Weber"), and Nurse Elliot K. Lee ("Dr. Lee"),[1] asserting claims for false arrest and illegal search and seizure in violation of the Fourth Amendment, and for deliberate indifference to his medical needs in violation of the Eighth Amendment (Doc. 91, "SAC").

On April 30, 2019, Api, Lebzetter, McManus, and Spaun filed an Answer to the Second Amended Complaint. On September 17, 2019, Judge Karas, who presided over this action before it was transferred to this Court on April 16, 2020, issued an Opinion & Order (the "Prior Order") granting motions to dismiss the Second Amended Complaint filed by the County Defendants and Teperman without prejudice. (Doc. 130, "Prior Ord.").[2] Before the Court are two motions to

---

[1] The Court notes that Dr. Lee was incorrectly sued herein as "Nurse."

[2] The Prior Order is available on commercial databases. *See Simmons v. Mason*, No. 17-CV-8886, 2019 WL 4525613 (S.D.N.Y. Sept. 18, 2019). However, for ease of reference, the Court cites herein the copy of the Prior Order filed on the docket.

dismiss: (1) Drs. Lee and Pendleton (together, the "Doctors") move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 153); and (2) Dr. Weber moves to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 41(b) (Doc. 152). For the reasons set forth below, the Court GRANTS the Doctors' motion to dismiss and DENIES without prejudice Dr. Weber's motion to dismiss.

The Court assumes the parties' familiarity with the factual allegations as laid out in the Prior Order (Prior Ord. at 2-6) and incorporates any additional factual allegations where appropriate *infra*.

## STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences

are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Justice*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991) (alteration in original)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is proper "where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . 'although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Harris*, 572 F.3d at 72)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court has also a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.   Federal Rule of Civil Procedure 41(b)

A district court may dismiss an action pursuant to Rule 41(b) "[i]f the plaintiff fails to prosecute or to comply with [the] rules or a court order." Fed. R. Civ. P. 41(b). "While a district court's power to dismiss an action is 'inherent,' 'dismissal for lack of prosecution is a harsh remedy that should be utilized only in extreme situations.'" *Mayanduenas v. Bigelow*, --- F. App'x ---, 2021 WL 972965, at *2 (2d Cir. Mar. 16, 2021) (citing *Lewis v. Rawson*, 564 F.3d 569, 575 (2d Cir. 2009)). In determining whether to dismiss an action for failure to prosecute under Rule 41(b), the Second Circuit has directed district courts to consider five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether [the] plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Jefferson v. Webber*, 777 F. App'x 11, 14 (2d Cir. 2019); *see also Bar-Levy v. Gerow*, No. 18-CV-09454, 2020 WL 7774297 (S.D.N.Y. Dec. 30, 2020). No single factor is dispositive. *Nita v. Connecticut Dep't of Envtl. Prot.*, 16 F.3d 482, 485 (2d Cir. 1994). Ultimately, the record must be viewed "as a whole" in order to determine whether dismissal is warranted. *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (citing *Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993)).

As pertinent to the present action, the Second Circuit has cautioned that "district courts should be especially hesitant to dismiss for procedural deficiencies where, as here, the failure is by a *pro se* litigant." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). "However, even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning." *Jacobs v. Cty. of Westchester*, No. 99-CV-4976, 2008 WL 199469, at *3 (S.D.N.Y. Jan. 22, 2008); *see also Chappell v. City of Peekskill*, No. 18-CV-05901, 2020 WL 6947427, at *2 (S.D.N.Y. Nov. 25, 2020).

## ANALYSIS

I.    Claims Against the Doctors

Plaintiff asserts § 1983 claims against the Doctors, alleging that they violated his Fourth Amendment rights by extracting blood and urine samples while he was in a coma in the ICU at Jacobi Medical Center ("JMC") following a car accident on October 19, 2014. (SAC 3, 6, 7, 13, 18).[3] The Doctors argue that his claims must be dismissed as time-barred and also fail to state a claim upon which relief can be granted.

Plaintiff alleges specifically that on October 19, 2014, he was admitted to JMC with multiple injuries suffered as a result of a car accident (*id.* at 12); that his blood and urine samples were taken while he was in a coma between October 19, 2014 and October 22, 2014 (Doc. 172, "Pl. First Opp'n" at 3; Doc. 173, "Pl. Sec. Opp'n" at 1);[4] and that he "signed out of" JMC on or about October 27, 2014 to go to jail (*id.* at 3, 7-8). Plaintiff contends that after the blood and urine samples were taken without his consent and subsequently used in a criminal proceeding against

---

[3] Citations to the Second Amended Complaint, and all other filed submissions (including the parties' briefs), correspond to the pagination generated by ECF.

[4] Plaintiff filed two separate documents in opposition to both sets of motions. While dated August 11, 2020 and August 20, 2020, respectively, they were filed on the ECF docket on October 6, 2020.

him without his consent, the blood and urine tests became "unreasonable" searches under the Fourth Amendment. (Pl. First Opp'n at 2-3).

Plaintiff pressed similar allegations against Nagler and Teperman based on JMC's turning over Plaintiff's blood and urine samples to Nagler. Judge Karas, in the Prior Order, held that Plaintiff failed to state Fourth Amendment claims against Nagler and Teperman, and explained that "[w]here blood or urine samples are taken for medical purposes, rather than to facilitate prosecution of the patient, the Fourth Amendment is not implicated." (Prior Ord. at 11-12). Again here, because Plaintiff's own submissions indicate that his samples were collected for medical purposes (*see* SAC at 17 ("Plaintiff's blood and urine [were] taken by Jacobi Medical staff for hospital purposes . . . .")), Plaintiff fails to state a Fourth Amendment claim against the Doctors.

To the extent Plaintiff contends that the Doctors gave his blood and urine samples to law enforcement improperly, again, as found previously by Judge Karas, Plaintiff's own submissions indicate that his blood and urine samples were collected pursuant to a warrant. Plaintiff alleged that JMC was sent "a letter to hold [Plaintiff's] blood and urine until they obtain a search warrant." (SAC at 17; *see also id*. at 6 (alleging that Nagler ordered JMC to "hold [Plaintiff's blood and urine samples] until she obtain[ed] a search warrant"); *id*. at 18 (alleging that Griffith obtained Plaintiff's blood and urine samples pursuant to a "search warrant [that] clear[ly] states Antoine Simmons")). Because Plaintiff failed to allege any facts undermining the validity of the warrant, he fails to state a Fourth Amendment claim against the Doctors. *See Anthony v. City of New York*, 339 F.3d 129, 142 (2d Cir. 2003) (holding blood and urine tests "undertaken to facilitate [the plaintiff's] diagnosis and treatment" were "constitutionally permissible" because they "were not conducted for any law enforcement purpose"). "Although the Fourth Amendment may have been implicated if Plaintiff's blood and urine samples were originally drawn for law enforcement

purposes or at the request of law enforcement officers . . . Plaintiff specifically alleges that his samples were taken 'upon admission to [JMC] for testing for hospital purposes.'" (Prior Ord. at 10-11 (quoting SAC at 18)).

Plaintiff argues in opposition that his blood sample was labeled that of an "unknown black man." (Pl. Sec. Opp'n at 2-4). Plaintiff does not allege or even suggest that the Doctors were involved with labeling the sample or deliberately engaged in any wrongdoing with its naming, and in any event, such labeling simply does not implicate the Fourth Amendment. To the extent Plaintiff claims that he was convicted of vehicular manslaughter in a separate proceeding in criminal court via a blood sample of another individual, such allegations do not create a Fourth Amendment claim within this Court's jurisdiction. Accordingly, Plaintiff's Fourth Amendment claims against the Doctors are dismissed.[5]

While "[d]istrict courts should frequently provide leave to amend before dismissing a *pro se* complaint . . . leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Plaintiff has already amended his pleading twice, and although Judge Karas granted Plaintiff leave to amend yet again to cure the same deficiencies discussed herein (Prior Ord. at 27-28), he did not avail himself of that opportunity (*see* Docs. 132, 134, 136). Here, as any amendment would be futile, and in light of the fact that Plaintiff has already amended his pleading twice (and

---

[5] In light of the Court's determinations herein, it need not and does not reach the Doctors' argument for dismissal based upon the statute of limitations.

disregarded a third opportunity offered by Judge Karas), the Court dismisses the claims alleged in Plaintiff's Second Amended Complaint against the Doctors with prejudice.[6]

II.   Dr. Weber's Discovery Requests

Dr. Weber seeks dismissal pursuant to Rule 41(b), arguing that Plaintiff has failed to prosecute his action and provide any discovery responses to Dr. Weber since adding him as a defendant over one year ago. (Doc. 152-11, "Weber Br." at 2). In particular, Dr. Weber served "combined discovery demands" on Plaintiff (Docs. 152-4; 152-6) and prepared HIPAA authorizations for Plaintiff to execute (Doc. 152-6). Plaintiff concedes that he has not provided discovery responses to Dr. Weber. (Pl. First Opp'n at 1-2). Indeed, Plaintiff argues that he has no responsibility to respond to Dr. Weber's discovery demands because the dates on the authorizations provided to Plaintiff for his signature were incorrect. (*Id*. at 1). Plaintiff does not address his failure to respond to the balance of Dr. Weber's discovery requests.

Although the Court does not condone the *pro se* Plaintiff's abject failure to respond to discovery demands, this case is in still in the early stages of litigation. The Court has not yet held an initial pretrial conference with the parties, nor has a discovery schedule been entered. The Court cannot conclude that Dr. Weber has been "irreversibly prejudiced" (Weber Br. at 2) by Plaintiff's failure to respond to the extant discovery demands. Viewing the record as a whole, as the Court must on a motion pursuant to Rule 41(b), the Court does not find that dismissal is warranted on the basis proffered by Dr. Weber. Indeed, the Court has not yet given the *pro se* Plaintiff any

---

[6] Because there is no longer any federal claim remaining against the Doctors, there is no longer any independent basis for federal jurisdiction over them in this action. To the extent Plaintiff's Second Amended Complaint could be construed to raise claims under New York State law against the Doctors, the Court declines to exercise supplemental jurisdiction over them and as such, they are dismissed without prejudice. *Maco v. Baldwin Union Free Sch. Dist.*, 249 F. Supp. 3d 674, 680 (E.D.N.Y. 2017), *aff'd*, 726 F. App'x 37 (2d Cir. 2018); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006); *Whitehead v. City of New York*, 953 F. Supp. 2d 367, 377 (E.D.N.Y. 2012).

notice that his case against Dr. Weber may be dismissed with prejudice for failing to prosecute this action against him and respond to his discovery demands. It now does, however, and Plaintiff is warned that his continued failure to engage in discovery, respond to counsel's requests, and take steps to advance this action may result in the dismissal of his lawsuit with prejudice.

As regards the HIPAA authorizations, specifically, the Court directs Dr. Weber's counsel, within fourteen days of the date of this Order, to re-send the forms with the dates corrected to Plaintiff for his signature and file proof of service on the docket. Plaintiff is directed to execute the authorization forms and return them to Dr. Weber's counsel within sixty days of the date of this Order. Should Plaintiff note any error, it shall not relieve him of his obligation to respond to Dr. Weber's discovery demands and Plaintiff shall simply correct such error prior to signing. Plaintiff is further directed to respond to all extant discovery demands served by Dr. Weber within sixty days of the date of this Order.

## **CONCLUSION**

Based upon the foregoing, the Doctors' motion to dismiss is GRANTED, and Drs. Lee and Pendleton are dismissed from this action. Dr. Weber's motion to dismiss is DENIED without prejudice to renewal should Plaintiff continue to fail to respond to Dr. Weber's extant discovery demands and comply with this Court's Orders herein.

Dr. Weber's counsel is directed to re-send the HIPAA authorization forms with the dates corrected to Plaintiff within fourteen days of the date of this Order and file proof of such service on the docket. Plaintiff shall respond to all of Dr. Weber's extant discovery demands within sixty days of the date of this Order.

As this matter has been referred to Magistrate Judge Krause for general pre-trial supervision including discovery, the parties are directed to write a joint letter to Judge Krause by April 9, 2021 requesting that the Court schedule an initial discovery conference.

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Docs. 152 and 153.

**SO ORDERED:**

Dated:   White Plains, New York
         March 26, 2021

_____
PHILIP M. HALPERN
United States District Judge